

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

**EMPLOYERS MUTUAL CASUALTY**                                          **PLAINTIFF**
**COMPANY**

**VS.**                                          CIVIL ACTION NO.: *3:11CV209WHBLRA*

**STEFAN G. BOURN, LYDIA H. BOURN,**                                          **DEFENDANTS**
**CHARLES BRADLEY ODOM, SR.,**
**ENGINEERS LABORATORIES, INC.,**
**BRENT CANTRELL, and JOHN DOES 1-**
**10**

## COMPLAINT FOR DECLARATORY RELIEF

**COMES NOW**, Plaintiff, Employers Mutual Casualty Company, (hereinafter "EMCC"),

by and through counsel, and pursuant to 28 *U.S.C.* § 2201 and *Rule* 57 of the *Federal Rules of*

*Civil Procedure*, files this Complaint for Declaratory Relief concerning the rights and duties

pertaining to certain contracts of insurance issued by EMCC to Engineers Laboratories, Inc., and

would show as follows:

### PARTIES

**1.**

Plaintiff, Employers Mutual Casualty Company, is an Iowa corporation with its principal

place of business at 717 Mulberry, Des Moines, Iowa  50309, and is qualified to do and is doing

business in the State of Mississippi.

**2.**

Defendants, Stefan G. Bourn and Lydia H. Bourn, are adult resident citizens of Madison

County, Mississippi, and may be served with process of this Court at their residence, located at

490 Johnstone Drive, Madison, Mississippi or through their counsel of record David C. Dunbar,

Esq., DunbarMonroe, P.A., 270 Trace Colony Park, Suite A, Ridgeland, Mississippi 39157.

{699503.DOC}

**3.**

Defendant, Charles Bradley Odom, Sr., is an adult resident citizen of Madison, Mississippi, and he may be served with process of this Court at his residence, located at 417 Cumberland Court, Madison, Mississippi, 39110, or at his place of business, 2510 Lakeland Terrace, Suite 400, Jackson, Mississippi 39216.

**4.**

Defendant, Engineers Laboratories, Inc., is a domestic corporation and may be served with process of this Court through its registered agent for service of process, Robert Bruce Shofner, 231 Beasley Road, Jackson, Mississippi.

**5.**

Defendant, Brent Anthony Cantrell, is an adult resident citizen of Madison County, Mississippi, and he may be served with process of this Court at his residence, located at 110 Dogwood Court, Madison, Mississippi.

**6.**

Defendants John Does 1-10 are as yet unidentified natural persons and/or corporations. which contracted to or did work related to the construction of a home located at 490 Johnstone Drive, Madison, Mississippi

## JURISDICTION AND VENUE

**7.**

This Court has jurisdiction pursuant to the provisions of 28 *U.S.C.* § 1332(a) as this action is between citizens of different States and the amount in controversy, exclusive of interest and costs, exceeds the sum and value of $75,000.00.

{699503.DOC}

**8.**

Venue is proper in the Jackson Division of the Southern District of Mississippi pursuant to 28 *U.S.C.* §1391(a) and (c), as well as the Uniform District Court Rules of the Northern and Southern Districts of Mississippi.

## CLAIM FOR DECLARATORY RELIEF

**9.**

There is a real, substantial and justiciable controversy between the parties concerning the contractual relationship of the parties with respect to certain contracts of insurance and whether there is any obligation to defend, investigate, adjust, settle and/or indemnify.

**10.**

This is an action for declaratory judgment pursuant to 28 *U.S.C.* § 2201 and Rule 57 *Fed. R. Civ. P.* for the purpose of determining questions of actual controversy between the parties as will hereinafter more fully appear.

## CONTRACT OF INSURANCE

**11.**

EMCC issued to Engineers Laboratories, Inc. ("ELI"), policies of insurance, specifically bearing policy number **3D5-35-29**, with applicable policy periods of 4/1/07 through 4/1/08; 4/1/08 through 4/1/09; 4/1/09 through 4/1//10; 4/1/10 through 4/1/11 and 4/1/11 through 4/1//12.  Complete copies of policies for the 4/1/07 through 4/1/08 and 4/1/09 through 4/1/10 time periods are attached hereto as **Exhibits "A"** and **"B"**, respectively.[1]

**12.**

Any coverage provided under the policies were subject to all terms, conditions and exclusions stated therein.   The insured is charged with knowledge of said policy terms,

---

[1] The policy for the time period 4/1/07 through 4/1/08 is different as detailed below from the other policies.  The policy for time period 4/1/09 through 4/1/10 is representative of other time periods and for the sake of judicial economy only these two (2) policies are attached hereto as exhibits.
{699503.DOC}

conditions and exclusions and is bound to same.  Further, the insured had actual and/or constructive knowledge of the contents and provisions of said policies.

**13.**

EMCC specifically incorporates herein by reference the entirety of the aforementioned policies, including but not limited to all terms, conditions and exclusions to the extent that any and all of same may impact the decisions to be made with regard to coverage herein.  Without limitation of the effect of any other policy terms, conditions and exclusions, the policies contain the following provisions, in part:

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 12 04**

### COMMERICAL GENERAL LIABLITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person organization qualifying as such under Section II – Who Is An Insured.
. . .

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILTY

1.    **Insuring Agreement**

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

(1)  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
(2)  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A and B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:
   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   **(2)** The "bodily injury" or "property damage: occurs during the policy period; and
   **(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that that "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
   **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
   **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
   **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or have begun to occur.
   . . .

**2.    Exclusions**
   This insurance does not apply to:

**a.    Expected Or Intended Injury**
"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b.    Contractual Liability**
"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to e damages because of "bodily injury" or "property damage, provided:

**(a)**      Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**      Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**j.      Damage To Property**
"Property damage" to:

. . .

**(5)**      That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.      Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

**l.      Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.      Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
**(2)**      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

. . .

**SECTION II – WHO IS AN INSURED**
**1.**   If you are designated in the Declarations as:

. . .

**d.**   An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

. . .

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:
   a.    Insureds;
   b.    Claims made or "suits" brought; or
   c.    Persons or organizations making claims or bringing "suits".
2. The General Aggregate Limit is the most we will pay for the sum of:
   a.    Medical expenses under Coverage C;
   b.    Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the products-completed operations hazard"; and
   c.    Damages under Coverage B.
3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".
4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.
5. Subject to 2. or 3. above, whichever applies., the Each Occurrence Limit is the most we will pay for the sum of:
   a.    Damages under Coverage A; and
   b.    Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of any one "occurrence".

. . .

## SECTION IV – COMMERCIAL GENERAL LIABLITY CONDITIONS

. . .

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**
   . . .
   a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
   (1)    How, when and where the "occurrence" or offense took place;
   (2)    The names and addresses of any injured persons and witnesses; and
   (3)    The nature and location of any injury or damage arising out of the "occurrence" or offense.
   . . .

   c.    You and any other involved insured must:
   (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the clam or "suit";
   . . .
   d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, with or without consent.
   . . .

4. **Other Insurance**
   If other valid and collectible insurance is available to the insured for a loss we cover under Coverage A or B of this Coverage Part, our obligations are limited as follows:

   a.    **Primary Insurance**
   This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that insurance by the method described in c. below.
   b.    **Excess Insurance**

{699503.DOC}

7

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

   **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

. . .

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have not duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.** **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

. . .

**6.** **Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

. . .

## SECTION V – DEFINITIONS

. . .

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

. . .

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

    **a.**      The repair, replacement, adjustment or removal of "your product" or "your work"; or

    **b.**      Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

. . .

**f.** That part of any contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

. . .

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**      False arrest, detention or imprisonment;

    **b.**      Malicious prosecution;

    **c.**      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor.

    **d.**      Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**      Oral or written publication, in any manner, of material that violates a person's right or privacy.

    **f.**      The use of another's advertising idea in your "advertisement", or

    **g.**      Infringing upon another's copyright trade dress or slogan in your "advertisement".

. . .

**16.** "Products-completed operations hazard":

    **a.**      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    **(1)**      Products that are still in your physical possession; or

    **(2)**      Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)**      When all of the work called for in your contract has been completed.

    **(b)**      When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)**      When that part of the work done at the job site has been put to its intended use by any other person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:
**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you and that condition was created by the "loading or unloading" of that vehicle by any insured;
**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or
**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:
**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
. . .

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal or advertising injury" to which this insurance applies are alleged. "Suit" includes:
**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;
**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.
. . .

**21.** "Your product":
**a.** Means:
**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
**(a)** You;
**(b)** Others trading under your name; or
**(c)** A person or organization whose business or assets you have acquired; and
**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
**b.** Includes
**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
**(2)** The providing of or failure to provide warnings or instructions.
**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.
**22.** "Your work":
**a.** Means:
**(1)** Work or operations performed by you or on your behalf; and
**(2)** Materials, parts or equipment furnished in connection with such work or operations.
**b.** Includes
**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
**(2)** The providing of or failure to provide warnings or instructions.

. . .

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CHANGES IN GENERAL LIABILITY FORMS FOR COMMERCIAL PACKAGE POLICIES**

This endorsement modifies insurances provided under the following:

COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
COMPREHENSIVE GENERAL LIABLITY INSURANCE
CONTRACTUAL LIABIITY INSURANCE
DRUGGISTS LIABILITY INSURANCE
ELEVATOR COLLISION INSURANCE
MANUFACTURERS AND CONTRACTORS LIABILITY INSURANCE
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY INSURANCE
OWNERS, LANDLORDS AND TENANTS LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE
SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE
STOREKEEPERS INSURANCE

**A.**   Whenever the term "policy" is used in any form listed above or in the declarations or any related endorsement it is changed to "coverage part."

. . .

**CG 00 99 11 85**

. . .

COMMERCIAL GENERAL LIABILITY
**CG 22 33 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – TESTING OR CONSULTING ERRORS AND OMISSIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to "bodily injury" or "property damage" or "personal and advertising injury" arising out of:
**1.**      An error, omission, defect or deficiency in:
   **a.**      Any test performed; or
   **b.**      An evaluation, a consultation or advice given, by or on behalf of any insured;
**2.**      The reporting of or reliance upon such test, evaluation, consultation or advice; or
**3.**      An error, omission, defect or deficiency in experimental data or the insured's interpretation of that data.

. . .

**COMMERCIAL GENERAL LIABILITY**
**CG 22 94 10 01**

**THIS ENDORMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion I. of Section I – Coverage A – Bodily Injury And Property Damage Liability is replaced by the following:
**2.      Exclusions**
          This insurance does not apply to:
**I.      Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

. . .

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In addition to the above, which are applicable, as stated, for all policy periods for the above described policies and any other EMCC policy issued or renewed containing the same policy terms and conditions, the following provisions identified in Exhibit "B" are also applicable for any and all policies in which they appear either before or after the policy period contained in Exhibit "B":

**COMMERCIAL GENERAL LIABILITY**
**CG 22 43 07 98**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**EXCLUSION – ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph 2., Exclusions of Section I- Coverage A- Bodily Injury and Property Damage Liability and Paragraph 2., Exclusions of Section I- Coverage B- Personal and Advertising Injury Liability:

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:
1.      The preparing, approving or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and
2.      Supervisory, inspection, architectural or engineering activities.
. . .

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

{699503.DOC}

## UNDERLYING FACTS AND LITIGATION

### 14.

This declaratory action arises out of litigation filed by Stefan G. Bourn and Lydia H. Bourn against Engineers Laboratories, Inc., Charles Bradley Odom, Sr., Brent Cantrell and John Does 1-10 in the Circuit Court of Madison County, Mississippi, cause number CI 2010-0500. A copy of said Complaint is attached hereto as **Exhibit "C"**. ELI requested that EMCC provide defense and/or indemnification related to the Complaint. On or about April 11, 2011, EMCC denied ELI's claim. A copy of said denial letter is attached hereto as **Exhibit "D"**. The Complaint makes the following allegations pertinent to EMCC's denial and the analysis of EMCC's duties, rights and obligations as to Engineers Laboratories, Inc.:

**IN THE CIRCUIT COURT OF MADISON COUNTY, MISSISSIPPI**

| | |
|---|---|
| **STEFAN G. BOURN and** | |
| **LYDIA H. BOURN** | **PLAINTIFFS** |
| **vs.** | **CIVIL ACTION NO. CI 2010-0500** |
| **CHARLES BRADLEY ODOM, SR.,** | |
| **ENGINEERS LABORATORIES, INC.,** | |
| **BRENT CANTRELL, and JOHN DOES 1-10** | **DEFENDANTS** |

### COMPLAINT

. . .

10.    On August 29, 2008, Plaintiffs purchased a home, located at 490 Johnstone Drive, Madison, Mississippi from Defendant Charles Bradley Odom, Sr. Odom was also the builder of the home.

11.    Defendant Brent Cantrell handled the "dirt work" on the home, constructing the pad upon which the home rests.

12.    Defendant Engineers Laboratories, Inc., was responsible for testing the work of Defendant Cantrell to ensure that proper standards were applied and materials used in constructing the pad.

13.    Odom completed construction of the home in or around November 2007 and resided in the home up until the time that the Plaintiffs purchased the home.

14.    In late December 2009 or early January 2010, Plaintiffs first noticed cracking in the home's foundation and exterior walls. Specifically, Plaintiffs noticed a substantial crack in the mortar of a brick exterior wall on the east side of the home, as well as cracking throughout the house, almost in a direct line from the exterior wall mortar crack to an area of stucco cracking on the west side of home.

15.    In January 2010, Plaintiff Stefan Bourn e-mailed Defendant Odom requesting a telephone call to discuss foundation issues. A telephone conference followed, after which Odom sent out Defendant Cantrell and a representative of Defendant Engineers Laboratories to inspect the home and foundation. Those parties concluded there were no foundation issues, but that drainage needed to be improved.

{699503.DOC}

16.     Defendant Odom engaged Britt Maxwell, an engineer, who performed a survey inside the house. According to Maxwell, one corner of the house was raised 4.5 inches out of line with the center point of the home. He was to have generated a drainage remediation plan but never did so. Maxwell later lost the original survey results and came back to perform his tests a second time. The results from the second survey confirmed the results from the first.

17.     As part of the installation of the piezometer, Plaintiffs had the engineer, David Coleman, take four additional soil borings on each side of the house right next to the foundation. Coleman found expansive clays very close to the ground surface.

18.     Movement in the slab of the Plaintiffs' residence is occurring as a result of the combination of the consolidation of improperly placed fill materials and the heaving and swelling of the highly expansive "Yazoo clays" situated at much too shallow depths for the structure.

19.     In addition, due to this faulty construction, and due to the fill materials being too shallow to mitigate the movement of the Yazoo claim, the Plaintiffs' home will continue to show foundation movement for the life of the home.

20.     To date, Defendant Odom has not submitted a drainage remediation plan for Plaintiffs' consideration. Rather, Defendant Odom has embarked on a long and systematic pattern of delay, indifference and non-responsiveness to the Plaintiffs and the escalating problems in their dwelling.

21.     Had Plaintiffs been made aware of these conditions in and around the subject house they would not have purchased the subject house.

22.     On October 29, 2010, Plaintiffs again notified Defendant Odom, this time via certified mail, return receipt requested, of the need for foundation repair.

23.     On November 11, 2010, Defendant Odom contacted the undersigned counsel via e-mail and acknowledged receipt of Plaintiffs' letter of October 29. Odom indicated that he "would like to start the process of correction."

24.     On November 16, 2010, the undersigned counsel responded to Mr. Odom's e-mail with a second letter, advising that the Bourns would provide another ten (10) days from November 16 in which for Odom to present a plan to repair the defects in the Bourn's home, or to advise the amount of time that he would need to formulate such a plan.

25.     As of the filing of this Complaint, Odom has not presented a plan to repair the defects in the Bourn's home advised the amount of time that he would need to formulate such a plan

. . .

## COUNT II- PROFESSIONAL NEGLIGENCE OF
## DEFENDANT ENGINEERS LABORATORIES, INC.

32.     Plaintiffs re-allege and incorporate paragraphs 1 through 31 above as if fully set forth below.

33.     Defendant Engineers Laboratories, Inc., is a professional geotechnical engineering firm, holding itself out to be competent to conduct site investigation and measurements, as well as soil testing necessary for proper residential construction.

34.     Defendant Engineers Laboratories, Inc., at all times relevant hereto, had a duty to act reasonably prudent [sic] as one holding itself out to be a qualified geotechnical engineering firm doing business in the State of Mississippi.

35.     Defendant Engineers Laboratories, Inc., has a recognized and set standard of care and duty which it owes members of the public in performing its work.

36.     By its actions and/or omissions, in failing to properly perform its duties in inspecting and measuring the site upon which the Plaintiffs' home was built, and in testing the soil in the pad upon which Plaintiffs' home was built, in a competent and non-defective manner, Defendant Engineers Laboratories, Inc., has breached its professional duties to the Plaintiffs.

37.     As a result of its breach of its recognized standard of care, its actions and omissions, and as a result of Plaintiffs' reasonable reliance upon Defendant Engineers Laboratories, Inc., Plaintiffs have been injured and damaged as stated herein below.

. . .

## COUNT VI- BREACH OF IMPLIED WARRANTY OF WORKMANSHIP-
## DEFENDANT ENGINEERS LABORATORIES, INC.

53.     Plaintiffs re-allege and incorporate paragraphs 1-52 above as if fully set forth below.

54.     Defendant Engineers Laboratories, Inc., as a geotechnical engineering firm, holds itself and its employees an representatives out to be competent to perform the work for which it contracts.

55.     As a matter of law, Engineers Laboratories, Inc., implicitly warranted to persons in the position of the Plaintiffs that it was, in fact, competent to perform the work performed by it inspecting, measuring and testing the site where Plaintiffs' home was constructed and further, implicitly warranted that the work performed by it was done in a good and workmanlike fashion.

56.     The work performed by Engineers Laboratories, Inc., and its employees and representatives at the site where Plaintiffs' home was constructed was, in fact, performed in a manner that was less than good and workmanlike.

57.     As a result of various failures and deficiencies in the work performed upon the site of the Plaintiffs' home by Engineers Laboratories, Inc., and/or its employees and agents as well as those under its direct supervision and control, Defendant Engineers Laboratories, Inc., has breached the implied warranty of good workmanship made for the benefit of these Plaintiffs.

58.     As a result of Defendant, Engineers Laboratories, Inc.'s breach of its implied warranty of workmanship, Plaintiffs have been damaged as indicated herein below.

. . .

## COUNT VIII- BREACH OF THE MISSISSIPPI NEW HOME WARRANTY ACT

65.     Plaintiffs re-allege and incorporate paragraphs 1 through 64 above as if fully set forth below.

66.     The subject dwelling was built and completed in or around November 2007.

67.     The subject dwelling was occupied by Defendant Odom in or around November 2007.

68.     The construction of the subject dwelling is governed by the "New Home Warranty Act," Miss. Code Ann. §83-58-1, *et seq.*

69.     As to the subject dwelling, Defendants, individually and jointly, are a person, corporation or other entity constructing a home or engaging others to construct a home for the purpose of sale.

70.     Defendants, by way of the Mississippi New Home Warranty Act, warranted to Plaintiffs that the subject dwelling house would be free from major structural defects, as that term is defined by the Mississippi New Home Warranty Act caused by non-compliance with the building standards for a period of six years following the completion of the construction of the subject dwelling house.

71.     As a result of non-compliance with the building standards and the resulting failure of the foundation system, the subject house has suffered a major structural defect as that term is defined by the Mississippi New Home Warranty Act.

72.     Plaintiffs, as owners acquiring title to the home from Defendant Odom, the builder, have standing pursuant to Miss. Code Ann. §83-58-13 to maintain this action under the New Home Warranty Act.

73.     Plaintiffs have provided Defendants with reasonable notice, both written and oral, and had conversations with and met with Defendants regarding the problems in their dwelling for over nearly one (1) year, thus satisfying the notice requirement of the Act.

74.     Further, Plaintiffs have given written notice, by registered or certified mail, advising Defendants of all defects and in giving Defendants a reasonable opportunity to comply with the provisions of the New Home Warranty Act.

75.     As of the date of the filing of this instant action, Defendants have failed to take any steps to remedy the above-referenced major structural defect, and have thus failed to comply with the provisions of the New Home Warranty Act.

76.     As such, Defendants have breached their duty and warranty as provided by the New Home Warranty Act, entitling Plaintiffs to seek damages as provided herein below.

## DAMAGES

77.     Plaintiffs re-allege and incorporate paragraphs 1 through 76 above as if fully set forth below.

78.     As a result of the aforementioned breaches, actions and omissions by the Defendants, Plaintiffs have sustained the following damages, which they are entitled to recover from the Defendants, jointly and severally:

{699503.DOC}

a.   Physical damage to Plaintiffs' home caused by the various construction defects at issue herein, as well as the costs necessary to repair and mitigate such issues;

b.   Diminution of the value of said property as a result of said defects in the construction of said property; and

c.   Costs associated with inspecting and testing the home and the site upon which the home is situated in efforts to pinpoint the cause of the problems with the home.

. . .

## BASIS FOR DECLARATORY RELIEF

### 15.

EMCC specifically requests that this Court adjudicate, consistent with the positive law of Mississippi, that the terms, conditions and exclusions of the above-referenced policies provide no coverage or duty to defend the claims asserted in the case styled *Stefan Bourn and Lydia H. Bourn v. Charles Bradley Odom, Sr., Engineers Laboratories, Inc., Brent Cantrell and John Does 10-10*, In the Circuit Court of Madison County, Mississippi; Civil Action No. CI-2010-0500 or any other insured or claimant with regard thereto, EMCC requests that this Court adjudicate that:

a)   EMCC owes no obligation whatsoever connected with the underlying litigation including, without limitation, no obligation to defend, settle, investigate, defend and/or indemnify Engineers Laboratories, Inc.; and

b)   EMCC cannot be held liable to Engineers Laboratories, Inc., for any judgment or settlement it might secure against or with Engineers Laboratories, Inc., arising from or connected in any way with the underlying litigation.

### 16.

EMCC is entitled to the relief requested, in part and without limitation, because of the effects or potential effects of any and all other policy terms, conditions or exclusions contained in each policy, for the following reasons:

a)   There is no coverage under the insuring language of the aforementioned policies as there has been no "occurrence" or "accident" as required under the insuring language of each of the policies, specifically, the insuring language of the policies only provides coverage for "property damage" caused by an "occurrence" and

{699503.DOC}

there has been no allegation of an "occurrence" as required under the insuring language of the policies;

b)      There is no coverage under the insuring language of the aforementioned policies as there has been no "bodily injury" or "personal and advertising injury";

c)      There is no coverage under the aforementioned policies for allegations related to acts, errors or omissions by ELI which allegedly caused "property damage" prior to April 1, 2007 as any such "property damage" would not have taken place within the applicable policy periods;

d)      In addition and by way of alternative to the above, even if the allegations were found to be within the insuring language, which they are not, coverage is nonetheless excluded because any alleged "property damage" would be expected or intended from the standpoint of the insured such that the **Expected or Intended Injury** exclusion would apply to exclude coverage.   Additionally, regardless of any other policy terms, conditions and exclusions, the allegations are outside any potential coverage under the policies because of the application of Endorsement CG 22 33 07 98 because the allegations made come within the scope of the Endorsement, specifically, that the insurance does not apply to any "property damage" arising out of "(1) an error, omission, defect or deficiency in: (a) any test performed; or (b) an evaluation, a consultation or advice given, by or on behalf of any insured; (2) the reporting of or reliance upon such test, evaluation, consultation or advice; or (3) an error, omission, defect or deficiency in experimental data or the insured's interpretation of that data. . ." In addition, to the extent allegations are made regarding time periods for which Endorsement CG 22 43 07 98 applies, it specifically provides that the insurance does not apply to "property damage" "arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity."

e)   Further, to the extent there was prior knowledge of any claim or continuation of property damage prior to any policy inception date, there is no coverage applicable to any claim for same.

f)   There may be additional policy provisions and/or facts determined in this or the underlying case or otherwise the effect of which is to provide other bases for there to be no coverage and, thus, no obligation by EMCC to the insured whatsoever in any way connected with the underlying claim, including, without limitation, no obligation to defend, settle, investigate, defend and/or indemnify with respect to same. EMCC reserves the right to assert all of same as bases for the lack of any such obligation.

**17.**

The presence of all parties in this litigation is necessary to adjudicate all issues presented herein and to avoid the possibility of duplicative or inconsistent rulings.

**WHEREFORE, PREMISES CONSIDERED,** EMCC requests that this Court enter its order declaring EMCC's rights and duties under the contract of insurance issued by EMCC and declaring that EMCC owes no obligation whatsoever connected with the underlying claim including, without limitation, no obligation to defend, settle, investigate, defend and/or indemnify.   EMCC further requests such other general or special relief to which it may be entitled including its costs, expenses and attorneys fees incurred in connection with this action and pre-judgment and post-judgment interest on all amounts, if applicable.

**RESPECTFULLY SUBMITTED,** this the _____ day of April, 2011.

**WEBB, SANDERS & WILLIAMS, PLLC**
**363 NORTH BROADWAY**
**POST OFFICE BOX 496**
**TUPELO, MISSISSIPPI 38802**
**(662)844-2137**
**DAN W. WEBB, MSB #7051**
**ROECHELLE R. MORGAN, MSB #100621**
**J. WAYNE DOSS, Jr., MSB #100530**

BY:

{699503.DOC}